IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSE B.,[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 3:25-cv-01491-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Jesse B. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.[2] The Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons explained below, the Court finds that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence.

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

[2] As reflected herein, Plaintiff uses "he/him pronouns." (Tr. 1119.)

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I. PLAINTIFF'S APPLICATIONS

Plaintiff was born in July 1999, making him twenty-one years old on March 31, 2021, his amended alleged disability onset date. (*See* Tr. 15, 34, 45-46, 87, 109.) Plaintiff has a limited education and no past relevant work experience. (*Id.* at 34, 289, 964, 1071.) In his applications, Plaintiff alleges disability due to anxiety, depression, and autism spectrum disorders. (*Id.* at 87, 109.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on January 19, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 15.) On March 19, 2025, Plaintiff and an impartial vocational expert ("VE") testified at a telephonic hearing held before an ALJ. (*Id.* at 44-65.) On April 25, 2025, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 15-35.) On June 22, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

### II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether

the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

## III. THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-35.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2021, his amended alleged disability onset date. (*Id.* at 15, 18, 46.) At step two, the ALJ determined that Plaintiff suffered from severe, medically determinable impairments: depressive disorder, generalized anxiety disorder, posttraumatic stress disorder ("PTSD"), and autism spectrum disorder. (*Id.* at 18.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 19.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels," subject to the following limitations: (1) Plaintiff

can "understand, remember, and carry out simple and detailed instructions that can be learned in [thirty] days or less," (2) Plaintiff can have "occasional contact with the general public and coworkers," and (3) Plaintiff can "perform work involving occasional changes in the work routine and setting." (*Id.* at 25.) At step four, the ALJ concluded that Plaintiff has no past relevant work experience. (*Id.* at 34.) Finally, at step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a hand packager, industrial cleaner, and machine packager. (*Id.* at 34-35.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred in two principal ways. (Pl.'s Opening Br. at 1, ECF No. 9; Def.'s Br. at 2, ECF No. 12; Pl.'s Reply Br. at 5, 8-9, ECF No. 13.) First, Plaintiff argues that the ALJ failed to provide legally sufficient explanations for discounting the opinions of the consultative psychiatric examiners, Scott Alvord, Psy.D. ("Dr. Alvord"), and Katia Ramirez, Psy.D. ("Dr. Ramirez"), and his licensed professional counselor ("LPC"), Ashlea Tenner ("LPC Tenner"). (Pl.'s Opening Br. at 1.) Second, Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons, supported by substantial evidence, for discounting his symptom testimony. (*Id.*)

The Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court therefore reverses the Commissioner's decision.

///

///

///

///

## I. MEDICAL OPINION EVIDENCE

### A. Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017."[3] *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b)).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source

---

[3] Considering that Plaintiff filed his applications on December 9, 2022 (Tr. 15), the parties agree the revised regulations apply here. (*See* Pl.'s Opening Br. at 9; Def.'s Br. at 3.)

supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an ALJ concludes that "two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

Where, as here, the new regulations apply, a district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

///

**B. Analysis**

Plaintiff argues that substantial evidence does not support the ALJ's evaluation of the opinions of Drs. Alvord and Ramirez and LPC Tenner. (Pl.'s Opening Br. at 1; Pl.'s Reply Br. at 5, 8-9.)

**1. Dr. Alvord**

**a. Dr. Alvord's Opinion**

State Disability Determination Services ("DDS") referred Plaintiff to Dr. Alvord for a two-part adult neuropsychological screening evaluation, which Dr. Alvord completed on January 5, 2024. (Tr. 1109-17.) He also completed a medical source statement on July 13, 2024. (*Id.* at 1096-1101.)

Dr. Alvord's evaluation consisted of a clinical interview, limited record review (i.e., four pages of counseling records), mental status examination, and battery of testing. (*Id.* at 1109-17.) Dr. Alvord's testing revealed a "complex profile characterized by strengths in certain cognitive areas (e.g., perceptual reasoning, auditory memory) alongside challenges in adaptive behavior, social interaction, and emotional well-being consistent with [a]utism and mood symptoms." (*Id.* at 1115.) Dr. Alvord's diagnostic impressions were that Plaintiff exhibited symptoms of autism spectrum disorder with an associated borderline intelligence quotient ("IQ") and carried diagnoses of autism spectrum disorder (i.e., "mild language impairment") and panic and depressive disorders not otherwise specified. (*Id.*) Dr. Alvord added that Plaintiff's history included "[a]cademic struggles, inconsistent employment, socialization difficulties, etc." which are "all consistent with mild autism." (*Id.*) Further, Dr. Alvord explained that Plaintiff needed "intensive psychiatric care" and "behavioral intervention to address [a]utism indicators" and that Plaintiff's "[n]eurodevelopmental delays" are "chronic" and psychiatric prognosis is "guarded." (*Id.*)

Dr. Alvord provided several recommendations. (*Id.* at 1115-16.) Specifically, Dr. Alvord explained that Plaintiff may benefit from (1) medication management (i.e., antidepressants, anxiolytics, and mood stabilizers), (2) therapy modalities, such as cognitive behavioral therapy, dialectical behavior therapy, social skills training, occupational therapy, and psychoeducation, (3) community resources like autism support groups, mental health clinics, vocational rehabilitation services, and recreational and social programs, (4) family supports (i.e., therapy, respite care services, and parent training programs), (5) mindfulness and relaxation techniques, (6) a structured routine and environment, and (7) advocacy and legal support to help "navigat[e] educational and legal systems to ensure access to appropriate services and accommodations." (*Id.*)

In addition to the evaluation and report that he completed on January 5, 2024, Dr. Alvord also filled out a medical source statement on July 13, 2024. (*Id.* at 1096-1101.) In response to several questions, Dr. Alvord cited his evaluation and report or used a five-point scale to rate Plaintiff's ability to function in certain categories of mental ability. (*Id.* at 1096-97.) For example, with respect to Plaintiff's ability to adapt and interact with others, Dr. Alvord opined that Plaintiff does "[n]ot necessarily" suffer from a "total lack or loss of [the] ability to function" but he is "not able to function . . . independently, appropriately, effectively, and on a sustained basis." (*Id.*, defining the ratings of one through five, with one being the most severe). Dr. Alvord further opined that on average, Plaintiff's mental conditions and treatment would cause him to miss more than four workdays per month and be off task more than fifty percent of the time. (*Id.* at 1100.)

**b. The ALJ's Decision**

The ALJ found Dr. Alvord's opinions "unpersuasive." (*Id.* at 30.) The ALJ found Dr. Alvord's January 2024 report "overly vague" and inconsistent with his July 2024 medical

source statement's "overstated limitations" and repeated references to "'See Report' with no clear indication of what report he was referencing[,] nor if he performed an exam associated with that report[.]" (*Id.*) Regarding limitations, the ALJ noted that Dr. Alvord's January 2024 report "only indicated 'challenges' in adaptive and social areas with strength in areas related to cognition[.]" (*Id.*)

Further, the ALJ found Dr. Alvord's opinions inconsistent with the opinions of the state agency psychological consultants, Sergiy Barsukov, Psy.D. ("Dr. Barsukov") and "Gary N.," Ph.D. ("Dr. Gary N."), "both of whom assessed no more than moderate limitations in [Plaintiff's] cognitive, social, concentration-related, and adaptive-functioning." (*Id.*) The ALJ also found Dr. Alvord's opinion "unsupported by evidence in the record," namely, he and Dr. Ramirez's "consultative exam and testing notes" and other providers' "treatment and mental status exams." (*Id.*)

**c. Disposition**

The Court finds that substantial evidence does not support the ALJ's discounting of Dr. Alvord's opinion.

Under the revised regulations, an "ALJ 'must articulate how persuasive [he] finds all of the medical opinions from each doctor or other source, and explain how [he] considered the supportability and consistency factors in reaching these findings.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792). Consistency concerns the extent to which a "medical opinion is consistent with the evidence from other medical and nonmedical sources," *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792), and "[s]upportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen*, 82 F.4th at 740

("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence.") (simplified).

The ALJ addressed supportability by finding that Dr. Alvord's opinion was "overly vague." (Tr. 30.) In support of this finding, the ALJ explained that Dr. Alvord "repeatedly [directed] the reader to 'See Report' with no clear indication of what report he was referencing nor if he performed an exam associated with that report." (*Id.*; *cf. id.* at 1096-97, 1099.)

Plaintiff argues (and the Court agrees) that the ALJ erred in discounting Dr. Alvord's opinion on the ground that he often cited only to "See Report" and thus his July 2024 medical source statement was "overly vague." (Pl.'s Opening Br. at 16; Tr. 30, 1096-97, 1099.) Of note, Dr. Alvord explained in his July 2024 medical source statement that he completed the form to the "best of his knowledge" but returned it with the term "treatment provider" lined out because "he [was] a one[-]time consultative examiner." (*Id.*) Dr. Alvord's form requested, among other things, his diagnoses and, as noted, he incorporated by reference a report that he prepared based on his one-time consultative evaluation. Accordingly, it follows that Dr. Alvord's references to "See Report" meant the only other record evidence that he provided. (*Compare* Tr. 1109-17 *and* Ct. Tr. Index at 6, ECF No. 8-1, demonstrating that Exhibits 25F and 27F, i.e., Tr. 1093-1102, 1109-17, are the only medical records associated with Dr. Alvord). Given this record evidence, the ALJ improperly discounted Dr. Alvord's opinion on the ground that it was "overly vague." *See Ortiz v. Bisignano*, 179 F.4th 691, 702-03 (9th Cir. 2026) (holding that the ALJ erred by "apparently 'misunderst[anding]'" and "wrongly ignor[ing]" record evidence) (simplified).

The ALJ also addressed supportability by finding that Dr. Alvord's opinion was "internally inconsistent." (Tr. 30.) The ALJ provided only one example in support of this finding. To that end, the ALJ explained that Dr. Alvord's January 2024 report reflected that Plaintiff

suffered from "'challenges' in adaptive and social areas with strengths in areas related to cognition" whereas his July 2024 medical source statement "offer[ed] overstated limitations." (*Id.*)

Ninth Circuit precedent "demand[s] that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492. The Ninth Circuit requires such reasoning because without it, "a reviewing court [is] . . . unable to review [the ALJ's] reasons meaningfully without improperly 'substituting [its] conclusions for the ALJ's, or speculating as to the grounds for the ALJ's conclusions.'" *Id.* (simplified) (quoting *Treichler*, 775 F.3d at 1103); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (explaining that ALJs "must provide sufficient reasoning that allows [federal courts] to perform [their] own review, because 'the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based'" (quoting *Treichler*, 775 F.3d at 1102)).

Plaintiff argues that the ALJ's internal inconsistency finding fails to satisfy the Ninth Circuit's specificity requirement. (Pl.'s Opening Br. at 16.) In response, the Commissioner emphasizes that the ALJ satisfied this requirement because he found that Dr. Alvord's January 2024 identification of adaptive and social challenges and cognitive strengths conflicted with the "overstated limitations" he identified in his July 2024 medical source statement. (Def.'s Br. at 9, quoting Tr. 30; *cf. id.* at 1115, listing the relevant description of Plaintiff's "complex profile"). Unlike the ALJ, the Commissioner adds that Dr. Alvord's January 2024 report documented abnormal findings but was otherwise "largely unremarkable." (Def.'s Br. at 9, citing Tr. 1110-14.)

///

"Long-standing principles of administrative law require [a federal court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (simplified). Thus, the Court may not consider post-hoc rationalizations the Commissioner advances on appeal.

Even if the Commissioner advanced no such rationalizations, however, his reasoning fails to resolve the relevant question. The problem here is that the ALJ failed to (1) identify what "overstated limitations" from Dr. Alvord's July 2024 medical source statement conflicted with the adaptive and social challenges that he described in his January 2024 medical source statement, or (2) explain how any conflict undermined his opinion. (*See* Tr. 30; *cf. id.* at 1096-1101, 1109-17.) That is noteworthy because Dr. Alvord explained that Plaintiff's "complex profile" (i.e., "strengths in certain cognitive areas . . . alongside challenges in adaptive behavior, social interaction, and emotional well-being") is "consistent with [a]utism and mood symptoms." (*Id.* at 1115, reflecting that Dr. Alvord later stated that Plaintiff's history of "[a]cademic struggles, inconsistent employment, socialization difficulties, etc. are all consistent with mild autism" but explained that Plaintiff's diagnoses also included panic and depressive disorders not otherwise specified).

This is also noteworthy because Dr. Alvord's testing revealed (1) "significant challenges in adaptive functioning, placing [Plaintiff] . . . at the 0.1st percentile," (2) "[n]otably low scores" in domains that were indicative of "difficulties in problem-solving, decision-making, and daily living skills," and (3) a "[s]ocial domain score . . . at the 1st percentile, suggesting [only] some ability to engage in social interactions." (*Id.* at 1114.) These objective test results appear to be consistent with the most severe ratings that Dr. Alvord assigned in his July 2024 medical source

statement (i.e., adapting and interacting with others), which presumably serve as the primary bases for Dr. Alvord's opinions on absenteeism and off-task behavior. (*See id.* at 1100; *see also id.* at 60, noting that the VE testified that a hypothetical individual could not sustain gainful employment if they were "off task [twenty] percent of the workday or absent two or more days per month").

Considering Plaintiff's diagnoses and the ALJ's lack of specificity, the Court concludes that substantial evidence does not support the ALJ's discounting of Dr. Alvord's opinion based on an internal inconsistency. *See Ortiz*, 179 F.4th at 702 (holding that substantial evidence did not support the ALJ's discounting of an examiner's opinion based on a "purported" inconsistency that did "not contradict the relevant diagnoses underlying [the provider's] opinion" and appeared "premised on a 'fundamental misunderstanding' of the nature of [the claimant's] symptoms") (simplified).

Finally, the ALJ discounted Dr. Alvord's opinion because the ALJ found it inconsistent with Drs. Alvord and Ramirez's "consultative exam and testing notes," the opinions of the non-examining state agency psychological consultants, Drs. Barsukov and Gary N., and other providers' "treatment and mental status exam[.]" (Tr. 30.) The ALJ found that "all of" this evidence "strongly support[ed]" Drs. Barsukov and Gary N.'s opinions and the RFC. (*Id.* at 30-31) (simplified).

The ALJ's reasoning does not amount to substantial evidence supporting his discounting of Dr. Alvord's opinion. As discussed above, the ALJ failed adequately to address Dr. Alvord's finding that Plaintiff's complex profile is consistent with autism and his most notable test results. Thus, it is unclear how Dr. Alvord's opinion conflicts with his or others' "exam and testing notes."

Relatedly, Drs. Barsukov and Gary N. completed their review of Plaintiff's medical records and issued their opinions on April 4 and December 28, 2023, respectively. (*See id.* at 92-95, Dr. Barsukov's psychiatric review technique ("PRT") form and mental RFC dated April 4, 2023; *id.* at 116, Dr. Gary N.'s PRT form and mental RFC dated December 28, 2023). As a result, Drs. Barsukov and Gary N. lacked an opportunity to review Dr. Alvord's evaluation, which appears to be the most comprehensive testing that any provider performed during the relevant period. *Cf. Cailean v. O'Malley*, No. 24-596, 2024 WL 4824035, at *2 (9th Cir. Nov. 19, 2024) (remanding "for the ALJ to reassess" the opinion of the claimant's orthopedic surgeon because "the ALJ's error . . . may have affected the ALJ's assessment of [the orthopedic surgeon's] opinions").

For these reasons, the Court finds that substantial evidence does not support the ALJ's evaluation of Dr. Alvord's opinion. *See Walls v. Bisignano*, No. 24-4342, 2025 WL 2049004, at *1-2 (9th Cir. July 22, 2025) (remanding for "further consideration" because the ALJ "mistakenly believed that [a medical] opinion was inconsistent with his own treatment notes" when "there was no internal inconsistency," a "key premise underlying the ALJ's reasoning [was] infirm," and the ALJ failed to satisfy the specificity requirement); *see also Gage v. Bisignano*, No. 24-6900, 2026 WL 25445, at *2 (9th Cir. Jan. 5, 2026) ("Examining the 'entire record as a whole,' . . . the ALJ's analysis of [these] . . . . opinions constitutes legal error, because the ALJ misstated the record and failed to consider relevant portions of the record.") (citations omitted).

**2. Dr. Ramirez**

**a. Dr. Ramirez's Opinion**

DDS referred Plaintiff to Dr. Ramirez for a psychological evaluation on December 20, 2023. (Tr. 1069-74.) Dr. Ramirez conducted a diagnostic interview and mental status exam and

reviewed Plaintiff's adult function report and LPC Tenner's clinical summary dated February 14, 2023. (*Id.* at 1069; *see also id.* at 371-78, 1034-38, attaching the function report and clinical summary).

Dr. Ramirez's diagnostic impressions were that Plaintiff suffered from general anxiety and panic disorders and would be at risk of an "increased rate of decompensation" if "any significant changes occur[ed] in [his] . . . social support system or physical health[.]" (*Id.* at 1073.) Dr. Ramirez recommended a "medication evaluation," continued and more frequent therapy sessions, and "homework to help [Plaintiff] . . . develop anxiety management skills" and "in-person session[s] to develop social skills, as anxiety makes a person want to avoid and the avoidance increases the anxiety." (*Id.*) Dr. Ramirez also explained that Plaintiff's "prognosis" is guarded considering that he has "not ever been gainfully employed and [that his anxiety] currently . . . create[d] great distress and impair[ed his] functioning." (*Id.*) Dr. Ramirez explained that Plaintiff's limited education "preclude[d] vocational options" but treatment "could potentially increase [his] functioning and decrease distress allowing [him] . . . to return to work." (*Id.*)

In terms of a functional assessment, Dr. Ramirez focused on limitations in Plaintiff's ability to maintain concentration, persistence, and pace. (*Id.* at 1073-74.) Dr. Ramirez opined that Plaintiff could perform simple and repetitive tasks but could not "perform on a consistent basis without any additional supervision" or "currently deal with the usual stress in a competitive or intensive environment on a full-time basis." (*Id.*) Dr. Ramirez added that Plaintiff would have difficulty "participating in an interview, attending work regularly, making it through a workday without significant disruption from psychological symptoms," and "accepting instruction from

supervisors and getting along appropriately with coworkers and the [general] public." (*Id.* at 1073.)

**b. The ALJ's Decision**

The ALJ found Dr. Ramirez's opinions unpersuasive. (*Id.* at 31.) The ALJ acknowledged that Dr. Ramirez "correctly assess[ed] some level of restriction" in Plaintiff's "ability to interact with coworkers and the public" and being capable of "performing simple routine work." (*Id.*) The ALJ, however, found that Dr. Ramirez "offer[ed] somewhat overstated limits, such as those related to being wholly unable to perform without additional supervision or tolerate the usual stressors of work." (*Id.*) The ALJ explained Dr. Ramirez's "overstated limitations" were inconsistent with Drs. Barsukov and Gary N.'s opinions, Drs. Ramirez and Alvord's "consultative exam[s] and testing notes," and other providers' "treatment and mental status exams." (*Id.*, noting that unlike Dr. Barsukov, Dr. Gary N. had "access to Dr. Ramirez's" exam and report).

**c. Disposition**

The Court finds that substantial evidence does not support the ALJ's discounting of Dr. Ramirez's opinion.

As noted, after acknowledging that Dr. Ramirez "correctly assess[ed] some level of restriction" in Plaintiff's "ability to interact with coworkers and the public and perform[] simple routine work," the ALJ discounted Dr. Ramirez's opinion because she "also offer[ed] somewhat overstated limits" (i.e., Plaintiff lacks the ability to "perform without additional supervision or tolerate the usual stressors of work"). (*Id.* at 31.) The ALJ explained that such "overstated limits" conflicted with Drs. Alvord and Ramirez's "consultative exam[s] and testing notes," Drs. Barsukov and Gary N.'s opinions, and other providers' "treatment and mental status exams." (*Id.*) (citations omitted).

Substantial evidence does not support discounting Dr. Ramirez's opinion on these grounds. Dr. Ramirez explained that Plaintiff failed to graduate or "progress to full-time work status," even though he participated in employer-mandated therapy sessions and his "employer and co-workers were supportive."[4] (*Id.* at 1073.) Dr. Ramirez also explained that Plaintiff exhibited "symptoms of excessive fear and anxiety and related behavioral disturbances" which "causes clinically significant distress and impairments in social, academic, occupational, and other important areas of functioning." (*Id.*) Dr. Ramirez added that Plaintiff has never been "gainfully employed" and Plaintiff's anxiety continued to cause "great distress and impair[ed] functioning." (*Id.*)

The Commissioner argues that the ALJ appropriately discounted Dr. Ramirez's opinion because it was internally inconsistent and conflicted with Drs. Alvord, Barsukov, and Gary N.'s opinions. (Def.'s Br. at 10.) Like his evaluation of Dr. Alvord's opinion, the ALJ fails to explain what part of Dr. Ramirez's consultative report undermines her most significant findings. (*See id.*; *cf.* Tr. 31.)

The Commissioner suggests that Dr. Ramirez's examination was "largely unremarkable." (Def.'s Br. at 10.) The Commissioner also suggests that certain findings—i.e., Plaintiff was cooperative and exhibited unremarkable thought process and content, intact memory, an adequate fund of knowledge, and an ability to concentrate when spelling and reciting months and animal names—undermines Dr. Ramirez's more "extreme opinions." (*See id.*; *cf.* Tr. 1069-74.) Although the Commissioner attempts to explain what the ALJ may have been thinking, it is

---

[4] As the Ninth Circuit has previously explained, "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not . . . experience [symptoms] and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).

inescapable that Dr. Alvord's improperly discounted opinion, which he based on his exam and comprehensive testing, appears to support the conclusion that Plaintiff's "complex profile" necessarily includes strengths and weaknesses, the latter of which may alone preclude full-time work. In other words, Dr. Alvord's objective test results align with Dr. Ramirez's challenged findings.

The Court also notes that the ALJ placed considerable weight on Drs. Barsukov and Gary N.'s review of Plaintiff's records, even though neither state agency consultant reviewed Dr. Alvord's opinion and comprehensive testing and only Dr. Gary N. reviewed Dr. Ramirez's report. Given these facts and the ALJ's failure to satisfy the specificity requirement, substantial evidence does not support the ALJ's evaluation of the supportability and consistency of Dr. Ramirez's opinion.

The ALJ in *Walls* similarly failed to satisfy the Ninth Circuit's specificity requirement. *See* 2025 WL 2049004, at *1 (citing *Lambert*, 980 F.3d at 1278). The Ninth Circuit held that "[t]o the extent the ALJ was referring to [the claimant's] 'unremarkable' physical examinations during his various doctor's visits discussed elsewhere in the ALJ's decision, that evidence [did] not constitute substantial evidence to reject [the claimant's orthopedic surgeon's] medical opinion wholesale." *Id.* at *2. In so holding, the Ninth Circuit emphasized that "[t]he ALJ never explained how exhibiting a normal gait or no deformities during a routine doctor's visit undermine[d the surgeon's] opinion that [the claimant could not], because of his severe obesity and neuropathic pain, stand for more prolonged periods of time or sit for more than [thirty] minutes without feeling numbness." *Id.* The Ninth Circuit "therefore conclude[d] that the ALJ's rejection of [this] medical opinion was erroneous and must remanded for further consideration."

*Id.* The same reasoning applies here and supports remand for further consideration of Dr. Ramirez's opinion.

### 3. LPC Tenner

#### a. LPC Tenner's Opinion

After treating Plaintiff for a year, LPC Tenner completed a clinical summary on February 14, 2023. (Tr. 1034-37.) She also completed a medical source statement on July 26, 2024. (*Id.* at 1103-08.)

In her clinical summary, LPC Tenner explained that Plaintiff was "assigned female sex at birth," "identifie[d] as transmasculine," and "use[d] he/him pronouns" and the name "Jaden." (*Id.* at 1034.) LPC Tenner further explained that Plaintiff attended counseling sessions since February 10, 2022, complained "primarily of anxiety, depression, past trauma, general/sexuality, and neurodivergence," reported a "past suicide attempt," and endorsed recent suicidal ideation without "any plan or intention for self-harm/suicide." (*Id.* at 1034, 1036.) LPC Tenner also explained that Plaintiff's prognosis was "guarded" and diagnoses were autistic disorder, attention-deficit hyperactivity disorder (combined type), PTSD, gender dysphoria, and feeling like the "[t]arget of (perceived) adverse discrimination and persecution." (*Id.*) Although LPC Tenner opined that Plaintiff "clearly" satisfied the applicable diagnostic criteria and suffered from "daily panic attacks and [an] inability to maintain employment," she recommended "appropriate psychological testing by a [psychiatrist] or [psychologist] level clinician" and "formal testing and evaluation by a psychologist to further confirm [her] diagnoses." (*Id.* at 1037.)

In her medical source statement, LPC Tenner identified the same diagnoses, described Plaintiff's depression as "moderate" to "severe," and used a five-point scale to rate Plaintiff's ability to function in certain categories of mental ability. (*Id.* at 1103-08.) For example, with

respect to concentration, persistence, and pace, maintaining "attention for extended periods of [two]-hour segments," and understanding, remembering, and carrying out detailed but uninvolved written and oral instructions, LPC Tenner opined that Plaintiff is unable to function "independently, appropriately, effectively, and on a sustained basis." (*Id.* at 1104-05, defining the assigned ratings). Like Dr. Alvord, LPC Tenner concluded by opining that on average, Plaintiff's mental health conditions and treatment would cause him to miss more than four workdays per month and be off task twenty to thirty percent of the time during an eight-hour workday. (*Id.* at 1107.)

**b. Disposition**

The ALJ found LPC Tenner's opinions "unpersuasive." (*Id.* at 29-30.) The parties dispute whether the ALJ committed reversible error in doing so. (Pl.'s Opening Br. at 10-15; Def.'s Br. at 4-8.)

The Ninth Circuit confronted a similar situation in *Valencia v. Colvin*, 615 F. App'x 427 (9th Cir. 2015). In that case, Ninth Circuit held that the ALJ erred in discounting the claimant's symptom testimony and a remand for further proceedings was warranted because the "record [did] not resolve" an apparent inconsistency "or other inconsistencies." *Id.* at 428. The Ninth Circuit explained that the claimant argued the ALJ erred by discounting her cardiologist's opinion, but it "need not reach the issue of what weight the ALJ should give the [medical] opinion based on all the evidence" because a "remand on an open record [was] required." *Id.* at 428 n.1.

Similarly here, the Court declines to evaluate whether the ALJ erred in discounting LPC Tenner's opinions because unresolved conflicts remain and require remand for further proceedings. *See Jones v. O'Malley*, No. 23-16136, 2024 WL 3963835, at *2 (9th Cir. Aug. 28, 2024) (remanding to the agency and explaining that "[b]ecause further development of the record

would allow the ALJ to properly assess[, among other things, the claimant's rheumatologist's] medical opinion, as well as to obtain additional [VE] testimony based on a reformulated RFC, [the appeal was] not the rare case in which remand for an immediate award of benefits is warranted").

## II. PLAINTIFF'S SYMPTOM TESTIMONY

The parties' remaining dispute concerns whether the ALJ committed reversible error in discounting Plaintiff's testimony. (*See* Pl.'s Opening Br. at 3-9; Def.'s Br. at 12-20; Pl.'s Reply Br. at 1-5.)

### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035-36). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

### B. Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 26, demonstrating that the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The

ALJ was therefore required to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to meet that standard. *See Garrison*, 759 F.3d at 1015 ("The clear and convincing standard is the most demanding required in Social Security cases." (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002))).

The Commissioner argues that the ALJ provided three clear and convincing reasons for discounting Plaintiff's testimony: (1) "improvement with treatment," (2) reported activities, and (3) conflicting "objective medical evidence." (Def.'s Br. at 12.) "[A]n ALJ may not discount a claimant's subjective symptom testimony by relying solely on the absence of corroborating objective medical evidence." *Burke v. Bisignano*, No. 24-5863, 2025 WL 3764054, at *1 (9th Cir. Dec. 30, 2025) (citing *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024)). Thus, the ALJ's subjective symptom analysis turns on Plaintiff's purported improvement and reported activities.

**1. Evidence of Improvement**

"[E]vidence of medical treatment successfully relieving [a claimant's] symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with [treatment] are not disabling for the purpose of determining eligibility for SSI benefits.") (simplified). In evaluating whether an ALJ appropriately discounted a claimant's symptom testimony on this ground, the question is whether the ALJ's rationale is "clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Contrary to the Commissioner's argument, the ALJ's rationale here is not clear enough to have the power to convince. The Commissioner relies on a single sentence in which the ALJ

stated that his preceding record cites, which concerned how Plaintiff "consistently presented" during LPC Tenner's mental status exams, revealed that LPC Tenner "consistently assesse[d Plaintiff's] prognosis as 'good' and regularly indicate[d] that [Plaintiff was] making steady progress in their treatment." (Tr. 27; *cf.* Def.'s Br. at 16, citing and then expanding this part of Tr. 27.)

"Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)). Such reports "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* (citation omitted); *cf. Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) (noting that "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce").

Like the ALJ's evaluation of Drs. Alvord and Ramirez's opinions, the ALJ's passing statement about Plaintiff's "good" prognosis and "steady progress" is insufficient to establish that he adequately considered the nature of Plaintiff's diagnoses, Plaintiff's limited environmental stressors, and the potential distance between Plaintiff's response and ability to work. "[T]he data points [an ALJ] choose[s] must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018. Neither the ALJ (nor the Commissioner) appear to cite examples of such "broader development."

///

///

In short, the Court finds that substantial evidence does not support the ALJ's purported discounting of Plaintiff's testimony based on evidence that his symptoms improved with treatment.

**2. Reported Activities**

Ninth Circuit precedent provides that an ALJ may discount a claimant's testimony based on an inconsistency between his claimed limitations and reported activities. In *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014), the Ninth Circuit confirmed as much, noting that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *see also Garrison*, 759 F.3d at 1016 (stating that if a claimant's "level of activity" is "inconsistent with [his] claimed limitations," an ALJ may discount the claimant's testimony based on his reported "activities") (simplified); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." (first citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); and then citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004))).

In evaluating Plaintiff's symptom testimony, the ALJ noted that Plaintiff "frequently reported engaging in a variety of daily activities[.]" (Tr. 27.) The ALJ added only that Plaintiff's activities included (1) "playing video games," (2) "reading," (3) "watching videos/movies," (4) "drawing or making art," (5) "seeing friends," (6) "going grocery shopping," (7) "attending a Renaissance Festival," (8) "flying on a plane for a trip out of state," and (8) "working their pet-sitting job." (*Id.*, citing Ex. 29F at 2, 7, 14, 22, 29, 44-45, 60, 67, 74, 79, 81, 98, 120, 122-124, i.e., Tr. 1123, 1128, 1135, 1143, 1150, 1165-66, 1181, 1188, 1195, 1200, 1202, 1219, 1241, 1243-45.)

The ALJ does not explain how these activities are incompatible with any aspect of Plaintiff's symptom testimony. (*See id.*) That is significant because the examples the ALJ cited are not supported by substantial evidence when viewed in context. Consider the ALJ's first example. On February 10, 2022, Plaintiff reported activities (1) through (5) and (8) above, but he also reported a recent suicide attempt, suffering from a "[d]epressed mood, low self-esteem, self-loathing, suicidal thoughts, self-harm, always [being] tired, nightmares, [and] trauma," isolation, "rarely leaving the house," and having two friends, one of whom he "rarely sees" and "another who is a family friend [he] sees occasionally." (*Id.* at 1123.) The record reflects that Plaintiff also briefly "tried to dog sit" but it did not "go anywhere." (*Id.* at 1071; *see also id.* at 1035, 1123, confirming that a year later, Plaintiff was not engaged in part-time "pet-sitting").

On this record, substantial evidence does not support the ALJ's discounting of Plaintiff's symptom testimony based on his reported activities. Accordingly, the ALJ failed to satisfy the clear and convincing reasons standard.[5] *See Burke*, 2025 WL 3764054, at *1 ("[A]n ALJ may not discount a claimant's subjective symptom testimony by relying solely on the absence of corroborating objective medical evidence." (citing *Ferguson*, 95 F.4th at 1200)); *cf. Brokaw v. Bisignano*, No. 24-6710, 2025 WL 3158801, at *2 (9th Cir. Nov. 12, 2025) ("Because the ALJ's rationale is clear enough that it has the power to convince, the ALJ's citation of [conflicting] medical records and daily activities provided sufficiently specific, clear, and convincing reasons for discounting her subjective testimony regarding [her allegedly debilitating] impairments.") (simplified).

*///*

[5] As discussed above, remand for further consideration of medical opinion evidence is necessary.

**CONCLUSION**

For the reasons stated, Court REVERSES the Commissioner's decision and REMANDS this matter to the agency for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 18th day of August, 2026.

Stacie F. Beckerman

HON. STACIE F. BECKERMAN
United States Magistrate Judge